[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DENYING MOTIONS OF CRRA AND SCRRA TO OPEN AND RECONSIDER
The plaintiffs CRRA and SCRRA have moved for reconsideration of their claim that the contracts between Wheelabrator Environmental Systems, Inc. (Wheelabrator) and the HRRA towns for disposal of waste from those towns establish as a matter of law, the existence of "a feasible and prudent" alternative to the licensing of the Lisbon plant, another source of air pollution as concluded by the court. "In any . . . licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air . . . and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect, so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative CT Page 5060 consistent with the reasonable requirements of the public health, safety and welfare." General Statutes ¶ 22a-19(b). These plaintiffs argue that, even if there will be a shortage of 400 tpd of capacity for disposal of waste generated in Connecticut by 1998, as the final decision of DEP indicates, the contractual obligation of Wheelabrator to dispose of the HRRA waste, amounting to 365 tpd, can be fulfilled at its facilities in New York and Massachusetts at costs no greater than would be incurred in trucking such waste to the proposed Lisbon plant.
The solution proposed by the plaintiffs of exporting Connecticut waste to other states is inconsistent with the statutory scheme for handling the waste disposal problem in this state. Section 22a-208d of the General Statutes authorizes the issuance of a permit for a resources recovery facility upon a determination that it is "necessary to meet the solid waste disposal needs of the state and will not result in substantial excess capacity" of waste disposal facilities. The applicant for a permit must demonstrate that "the throughput capacity of the proposed facility, when combined with the throughput capacity of existing . . . facilities shall not exceed the total throughput capacity of facilities needed to process waste generated in this state. . . ." These statutes do not expressly preclude the export of Connecticut waste to other states, but their focus on the waste disposal needs of this state and their authorization of new facilities when the capacity of existing facilities in this state is exceeded signify that the statutory goal is to have sufficient capacity in Connecticut to dispose of all waste generated within the state. Although exporting our waste to other states might serve as a temporary measure, the statutes involved indicate that such an expedient was never contemplated as a permanent solution to the waste disposal problem in this state.
It is ordered that the motions of CRRA and SCRRA to open and reconsider the original judgment be denied.
David M. Shea, J. State Trial Judge CT Page 5061